**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KATHLEEN MACPEAK,** *Plaintiff,* v. **UNUM LIFE INS. CO. OF AMERICA,** *Defendant.* | **Civil No. 24-1650** |

**MEMORANDUM**

**COSTELLO, J.** **September 28, 2026**

Plaintiff Kathleen Macpeak is an attorney for Morgan Lewis & Bockius LLP who specializes in securities law. Def.'s Mot. for Summ. J. ¶¶ 3, 11 (ECF No. 19). She suffers from, among other things, migraines and cyclical vomiting syndrome. *Id.* ¶¶ 31, 35. Defendant Unum Life Insurance Company paid Plaintiff long-term disability benefits for years. In November 2023, Defendant terminated Plaintiff's benefits. Plaintiff then brought this action challenging the termination under the Employee Retirement Income Security Act ("ERISA"). The parties have filed cross motions for summary judgment. For the reasons that follow, the Court will grant Plaintiff's motion and deny Defendant's motion.

## I. BACKGROUND

Plaintiff began her legal career as an associate with Morgan Lewis in 1999. Compl. ¶ 10 (ECF No. 1). Plaintiff temporarily left Morgan Lewis in 2002 to serve as in-house counsel for a financial services company. *Id.* From 2004 to 2012, Plaintiff practiced at another law firm. *Id.* She returned to Morgan Lewis as Of Counsel in 2014. *Id.*

Plaintiff practiced as a full-time attorney at Morgan Lewis until February 1, 2015. Joint Appendix ("J.A.") at 57 (ECF No. 26). As of that date, Plaintiff reduced her hours to 80% of the

standard full-time schedule due to health issues. *Id.* at 110. On September 5, 2017, Plaintiff further reduced her schedule to 10% of the standard full-time schedule. *Id.* at 57. Plaintiff continues to practice at Morgan Lewis in a part-time capacity. J.A. at 311 (ECF No. 26-4).

**A. Relevant Plan Provisions**

Defendant paid Plaintiff long-term disability benefits from September 2017 through November 2023 under a plan (the "Plan") issued to her employer. ECF No. 19 ¶ 15. A person is disabled under the Plan if Defendant determines that the person is "limited from performing the material and substantial duties" of his or her "regular occupation" due to sickness or injury. *Id.* ¶ 22. "Limited" refers to what the person cannot do. *Id.* ¶ 23. "Material and substantial duties" are "duties that are normally required for the performance of [the person's] regular occupation." *Id.* ¶ 24.

For attorneys, the Plan defines "regular occupation" as the attorney's "specialty in the practice of law" which the attorney is routinely performing when the disability begins. *Id.* ¶ 25. This is different from how the Plan treats non-attorneys. For non-attorneys, "regular occupation" means the occupation the person is routinely performing when the disability begins. *Id.* To determine "regular occupation" for non-attorneys, the Plan calls for Defendant to consider the occupation "as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." *Id.*

**B. Plaintiff's Duties**

At the time Plaintiff was first evaluated for long-term disability benefits, the "Of Counsel" position at her firm was described by her employer as a high-level, specialized position requiring over seven years of experience, substantial contributions to the firm, and strong cognitive abilities for complex legal analysis. ECF No. 26 at 112-13. Plaintiff's specific role

was securities lawyer. *Id.* at 118. As such, Plaintiff was responsible for researching regulatory laws and drafting documents for mutual funds and other investment products. *Id.* Plaintiff also interacted with clients, supervised junior associates, and reported on her work to the firm's partners. *Id.* Although her duties previously required her to travel for board meetings, Plaintiff stopped doing that in 2015 because of her conditions. *Id.*

**C. 2019 Vocational Review**

In a 2019 vocational review, Defendant's consultant evaluated Plaintiff's occupation as an "Attorney" as performed in the "national economy." *Id.* at 121. The reviewer wrote the following:

> The vocational documents have been reviewed and the occupation in the national economy is an Attorney, eDOT code 110.117-022. An employee in this occupation advises, consults, litigates and performs trial work, and carries out the legal processes necessary to effect the rights, privileges, and obligations of the organization. These duties are consistent with the job's primary responsibilities noted on the job description and [employer] bio page of advising on various regulatory compliance and securities law issues to include mergers and acquisitions. These duties are also consistent with the [Plaintiff's] reports . . . involving drafting documents, speaking with clients and overseeing junior associates.

*Id.*

While noting, among other things, Plaintiff's work "advising on various regulatory compliance and securities law issues," the review did not refer to Plaintiff's specialty as a securities lawyer. In addition, the review included a broad array of general attorney duties that did not apply to Plaintiff's specialty, such as performing trial work, conducting pretrial preparation, defending the organization in lawsuits, advising on tax matters, applying for patents and copyrights, examining advertising materials, settling labor disputes, and teaching college courses in law. *Id.* at 121-22.

The vocational review also noted that Plaintiff's position was sedentary. *Id.* at 122. As a sedentary position, the review explained that the physical demands of an attorney consisted of mostly sitting, lifting up to ten pounds, occasionally reaching and using a keyboard. *Id.* The position also purportedly required "frequent" automobile travel to meet with clients and appear in court. *Id.* Finally, the vocational review described an attorney's mental and cognitive demands in general terms, such as effective communication, problem-solving, making judgments and decisions based on subjective and objective criteria, accepting responsibility for directing others, and executing a variety of duties without any loss of operating efficiency. *Id.* at 123.

**D. Termination of Benefits**

In November 2023, Defendant determined that Plaintiff was no longer disabled because she was "not limited from performing the duties of [her] regular occupation" as an "Attorney." ECF No. 26-4 at 263. As a result, Defendant terminated her benefits. *Id.*

Leading up to the termination, Defendant arranged for two physicians to conduct medical reviews. First, Defendant asked Dr. Christine Jones whether Plaintiff was precluded from performing "the following functional demands on a full-time basis." ECF No. 26-4 at 257. The demands that followed were the physical demands of performing sedentary work and the general cognitive demands of attorneys as described above. *Id.* at 254, 256-57. The description did not include the more specific duties of Plaintiff's specialty. *Id.* Dr. Jones concluded that Plaintiff was not precluded "from performing the outlined functional demands on a full-time basis." *Id.* at 257. Next, Dr. Keren McCarthy reviewed Plaintiff's file and considered the same question—whether Plaintiff was precluded from performing the physical and cognitive demands of an attorney generally. *Id.* at 258. She also concluded that Plaintiff was not precluded from performing these duties. *Id.* at 259-60.

Days after Dr. McCarthy's review, Defendant sent Plaintiff a letter terminating her benefits. *Id.* at 262. The letter explained that Defendant's vocational consultant determined that Plaintiff's "regular occupation as performed in the national economy is, Sedentary" before again listing only the physical and cognitive demands of an attorney generally. *Id.* at 263. Like both physicians' reviews, the letter did not reference the duties Plaintiff reported having or those outlined in her job description. *Id.* Relying on this generic vocational profile and Plaintiff's part-time work hours, Defendant concluded that she was no longer limited from performing her regular occupation as an attorney. *Id.* at 263, 265.

**E. Plaintiff's Appeal**

Plaintiff timely appealed. *Id.* at 271-72. As part of the appeal, Defendant had a third physician, Dr. Zachary Gross, conduct a medical review. *Id.* at 285. Defendant asked Dr. Gross to evaluate whether the information in the file precluded Plaintiff from performing the general physical and cognitive demands of an attorney. *Id.* at 288. Dr. Gross concluded that the medical record did not support restrictions that would preclude Plaintiff from performing those occupational demands. *Id.* at 290. In response to Dr. Gross's report, Plaintiff provided additional letters and notes from her medical providers disagreeing with Defendant's medical consultants. *Id.* at 297-98. She also provided additional information about her inability to work and satisfy the demands of her job on a full-time basis. *Id.* On January 24, 2024, Defendant upheld the termination of benefits. *Id.* at 309-11. This lawsuit followed.

## II. LEGAL STANDARD

**A. Summary Judgment**

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine." *Bennett v. SEPTA*, No. 23-1271, 2024 WL 404959, at *6 (E.D. Pa. Feb. 2, 2024), *aff'd sub nom.*, *Bennett v. Se. Pa. Transp. Auth.*, No. 24-1376, 2025 WL 1248815 (3d Cir. Apr. 30, 2025). A fact is material if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if, "based on the evidence, 'a reasonable jury could return a verdict for the nonmoving party.'" *Bennett*, 2024 WL 404959, at *6 (quoting *Anderson*, 477 U.S. at 248).

The summary judgment standards do not change when the parties file cross-motions. *Se. Pa. Transp. Auth. v. Pa. Pub. Util. Comm'n*, 826 F. Supp. 1506, 1512 (E.D. Pa. 1993). Additionally, cross-motions do "not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Transportes Ferreos de Venezuela II CA v. NKK Corp.*, 239 F.3d 555, 560 (3d Cir. 2001) (quotation omitted).

**B. ERISA**

Courts review a denial of ERISA benefits "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where a plan grants such discretion, the court reviews a denial of benefits for an abuse of discretion. *Mullins v. Consol Energy, Inc. Long Term Disability Plan*, No. 22-2930, 110 F.4th 180, 185 (3d Cir. 2024). The abuse of discretion standard is essentially identical to an arbitrary and capricious standard. *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 n. 2 (3d Cir. 2011).

The parties do not dispute that the Plan confers discretionary authority upon Defendant and that the arbitrary and capricious standard applies.[1] Br. in Supp. of Pl.'s Mot. for Summ. J. at 3 (ECF No. 18-1); Br. in Supp. of Def.'s Mot. for Summ. J. at 6 (ECF No. 19-1). The Court will therefore apply the abuse of discretion/arbitrary and capricious standard to Defendant's termination decision.

Under this standard, the Court does not substitute its own judgment for that of the defendant in determining eligibility for benefits, and a plan administrator's decision will not be disturbed if it is reasonable. *Mullins*, 110 F.4th at 186 (internal citations omitted). A decision is arbitrary or capricious "if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* (citing *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir. 2012)); *see also Funk v. CIGNA Grp. Ins.*, 648 F.3d 182, 190 (3d Cir. 2011). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mullins*, 110 F.4th at 186 (citation omitted). A "decision is also subject to judicial correction when the plan administrator has failed to comply with the procedures required by the plan." *Funk*, 648 F.3d at 190 (citation omitted). Applying this standard, the Court concludes that Defendant abused its discretion by failing to adhere to the plain language of the Plan.

## III. DISCUSSION

### A. Defendant's Evaluation of Plaintiff's "Regular Occupation"

Plaintiff argues that Defendant's decision to terminate her benefits was arbitrary and capricious because Defendant failed to evaluate her claim under her regular occupation as a

[1] While Plaintiff's response to Defendant's motion suggests that purported Department of Labor regulatory violations could trigger a *de novo* standard of review, Plaintiff ultimately assumes that the arbitrary and capricious standard applies. Pl.'s Resp. to Def.'s Mot. for Summ. J. at 2-4 (ECF No. 21).

securities lawyer, as required by the Plan.[2] ECF No. 18-1 at 4. Defendant maintains that its evaluation properly considered the information Plaintiff provided regarding her specialty. Def.'s Br. in Opp. to Pl.'s Mot. for Summ. J. at 12 (ECF No. 20-1). The Court agrees with Plaintiff.

When an ERISA plan defines disability by referencing a claimant's "regular occupation," the plan administrator must evaluate the actual, material, and substantial duties the insured routinely performed before the onset of the disability. *Lasser v. Reliance Standard Life Ins. Co.*, 344 F.3d 381, 385-86 (3d Cir. 2003). While an administrator generally retains the authority to interpret plan terms and a court should "defer to the administrator's reasonable interpretation of ambiguous plan language[,] . . . the administrator's interpretation may not conflict with the plain language of the plan." *Patrick v. Reliance Standard Life Ins. Co.*, Nos. 21-1681 & 22-1034, 2023 WL 7381460 (3d Cir. 2023) (citing *Fleisher*, 679 F.3d at 121).

Under this framework, it is unreasonable for an administrator to ignore an insured's specialized duties and treat the claimant as a generalist. *Lasser*, 344 F.3d at 385-86. An administrator acts arbitrarily when it relies on generalized national occupational databases to dilute or mischaracterize the distinct physical or cognitive demands of an insured's true occupation. *See Patrick*, 2023 WL 7381460, at *3.

Applying these standards here, Defendant's reliance on the general duties of an attorney rather than Plaintiff's actual duties conflicts with the plain language of the Plan. As outlined *supra* at 2, Defendant was required to assess whether Plaintiff was limited in her ability to perform the material and substantial duties of her legal specialty. Instead, Defendant erroneously

---

[2] Plaintiff also argues that there was no material change in her condition and that Defendant violated Department of Labor regulations when it failed to consider the additional evidence she provided on appeal. ECF No. 18-1 at 8-11. Because the Court finds that Defendant abused its discretion by failing to adhere to the plain language of the Plan, it declines to reach these additional arguments.

relied on the physical and cognitive duties of attorneys generally. *See*, *e.g.*, ECF No. 26-4 at 263, 270, 282-83, 285.

Defendant counters that it properly analyzed whether Plaintiff was limited in performing the material and substantial duties of her regular occupation as defined in the Plan. ECF No. 20-1 at 12. To support this position, Defendant points to the 2019 vocational review in which the consultant stated that the general duties of an attorney are consistent with Plaintiff's job description. *Id.* at 12-13. Specifically, in the introduction of the 2019 review, the consultant noted Plaintiff's work "advising on various regulatory compliance and securities law issues." ECF No. 26 at 121.

However, viewed in its entirety, the 2019 vocational review does not support Defendant's position. While the consultant acknowledged certain tasks related to Plaintiff's specialty in the introduction, she then completely ignored it in her analysis and instead applied the general duties of an attorney.[3] This resulted in a list of duties that were largely unrelated to Plaintiff's specialty. *See* ECF No. 26 at 121-22. As a result, the vocational review does not support Defendant's argument that it properly evaluated Plaintiff's regular occupation.

Additionally, Defendant repeatedly treated Plaintiff as a generalist and asked its medical consultants to consider Plaintiff's ability to perform very general physical and cognitive duties. ECF No. 26-4 at 256-59, 263, 288. The medical reviewers complied and evaluated Plaintiff's capabilities against the general duties of an attorney rather than the duties of a securities lawyer. *Id.* at 114-15, 235, 254-57, 258-59, 263, 270, 282-83, 285. In fact, the record is devoid of any indication that Defendant ever measured Plaintiff's limitations against her actual duties. In

[3] The termination letter also referred to the role of an attorney as performed in the national economy and did not take note of Plaintiff's specialty. ECF No. 26-4 at 263.

similar circumstances, the Court of Appeals for the First Circuit held that an administrator's benefits decision was arbitrary and capricious because it relied on the DOT description of a generic lawyer, "rather than a job description that fully and accurately encompassed the material duties of [Plaintiff's] specialized area of legal practice[.]" *Doe v. Standard Ins. Co.*, 852 F.3d 118, 125 (1st Cir. 2017).

The same result is required here. Because Defendant failed to adhere to the plain language of the Plan, which required it to evaluate Plaintiff's regular occupation, it abused its discretion in terminating Plaintiff's benefits. Accordingly, the Court will grant Plaintiff's motion for summary judgment.

### B. Remedy

Having determined that Defendant abused its discretion, the Court must next determine the appropriate remedy by considering the status quo prior to the challenged administrative action. *Miller*, 632 F.3d at 856. Under Third Circuit precedent, an erroneous initial denial generally warrants a remand to the plan administrator, whereas an improper termination of previously approved benefits warrants reinstatement of those benefits. *Id.* at 856-57. Because Defendant arbitrarily terminated long-term disability benefits it had already approved and paid to Plaintiff, retroactive reinstatement is the proper remedy. Accordingly, the Court will order Defendant to retroactively reinstate Plaintiff's benefits.

## IV. CONCLUSION

By evaluating Plaintiff's capacity based on the generic duties of an attorney rather than the material and substantial duties of her legal specialty as a securities lawyer, Defendant failed to adhere to the plain language of the Plan. It therefore abused its discretion when it terminated her long-term disability benefits. Because Defendant improperly terminated previously

approved benefits, retroactive reinstatement is the appropriate remedy. The Court will grant Plaintiff's motion for summary judgment and deny Defendant's cross-motion. An appropriate Order follows.

**BY THE COURT:**

MARY KAY COSTELLO, J.